IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

SHARON BECKER,                              CASE NO.:

    Plaintiff,

vs.

WAL-MART STORES EAST, LP, a
Foreign Limited Partnership,

    Defendant.                              /

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHARON BECKER ("Plaintiff"), by and through undersigned counsel, herby files this complaint against Defendant, WAL-MART STORES EAST, LP, a Foreign Limited Partnership ("Defendant"), and in support thereof states as follows:

## INTRODUCTION

1. This is an action brought pursuant the Americans with Disabilities Act, as amended, 42 U.S.C. 12101, et seq. ("ADAAA") to recover emotional distress damages, pain and suffering, reasonable attorneys' fees and costs, and any other relief to which the Plaintiff is entitled including but not limited to equitable relief.

## PARTIES

2. Plaintiff is an adult individual who resides in Pinellas County, Florida.

3. Defendant is a Foreign Limited Partnership, licensed and authorized to conduct business in the State of Florida, doing business in Pinellas County, Florida.

4. At all times relevant hereto, Defendant conducted business in Pinellas

1

County, Florida.

5. At all times relevant hereto, Plaintiff was an "employee" of Defendant within the meaning of ADAAA.

6. At all times relevant hereto, Defendant was, and continues to be, "employers" within the meaning of the ADAAA.

7. Defendant is an employer under the ADAAA because, at all relevant times, it employed greater than 15 employees.

## JURISDICTION AND VENUE

8. Jurisdiction of this matter arises under 28 U.S.C. §1331 with federal questions involving the ADAAA.

9. This Court has jurisdiction over Plaintiff's claims because, at all times material to this Complaint, Plaintiff worked for Defendant in Pinellas County, Florida.

10. The illegal conduct complained of and the resultant injury occurred within the judicial district in and for Pinellas County, Florida.

11. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 16, 2017, which was dual filed with the Florida Commission on Human Relations (FCHR), with respect to her ADAAA claim(s). On March 8, 2022, the EEOC issued its right-to-sue letter. Therefore this complaint is being filed within 90 days of Plaintiff receiving her right-to-sue letter.

## FACTUAL ALLEGATIONS

12. Plaintiff worked for Defendant beginning on April 4, 2014 as a Sales Associate located at Store #5266 in Hudson, Florida.

13. Plaintiff was employed by Defendant from April 4, 2014 until her termination on November 6, 2016.

14. On or about April 23, 2016, Plaintiff was scheduled to be at work at 6:00 a.m.

15. On the way to work Plaintiff began experiencing symptoms correlated with a heart attack. Plaintiff immediately went to the hospital.

16. Plaintiff thereafter did suffer from a heart attack while in the hospital.

17. Plaintiff's doctor executed a "Return to Work Form" stating Plaintiff could return to work on May 2, 2016, which Plaintiff provided to Defendant.

18. During her absence from work, Plaintiff followed all policies and procedures notifying management of her expected absence due to her medical disability.

19. On or about April 23, 2016, Plaintiff initiated a request for accommodation in the form of medical leave through Defendant's third-party leave administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick").

20. Defendant approved Plaintiff's request for leave for April 23, 2016 through April 26, 2016, but denied Plaintiff's requests for leave for April 27, 2016 and April 30, 2016.

21. On May 13, 2016, Plaintiff arrived to work for her shift having heart palpitations symptomatic of another heart attack.

22. Plaintiff informed her Department Manager that she believed she was having another heart attack and needed to seek medical assistance.

23. Plaintiff immediately left work and presented to the hospital for evaluation.

24. Plaintiff ultimately was recommended for surgery which she underwent while in the hospital.

25. In total, Plaintiff was in the hospital from May 13, 2016, to May 17, 2016.

26. Plaintiff's doctor provided Plaintiff with a doctor's note indicating she could return to work on May 19, 2016, which Plaintiff provided to Defendant.

27. Again, during her absence from work Plaintiff followed all policies and procedures regarding notifying management of her expected absence due to her disability.

28. Plaintiff sought accommodations in the form of leave under the FCRA to cover the days she spent hospitalized.

29. Specifically, Plaintiff submitted another request for leave for the time period covering her hospitalization and recovery period. Indeed, one of Defendant's personnel employees named Kelly (last name unknown) assisted Plaintiff in properly completing the request for leave in Defendant's break room.

30. Additionally, Plaintiff discussed her need for accommodation(s) due to her disability and hospitalization with her manager, James Schroeder. She provided him with documentation supporting her disability, hospitalization and need for accommodation.

31. Once Plaintiff returned to work she performed her job satisfactorily and without any issues.

32. Unbeknownst to Plaintiff, Defendant did not immediately approve or deny Plaintiff's accommodation request but instead, held Plaintiff's request for leave in a "conditional" status until November 2016.

33. On November 7, 2016, Plaintiff was informed her accommodation request from May 2016 was denied. Her absences that resulted from her disability/medical condition were reverted from a "conditional" status to "denied." As a result, Plaintiff received "occurrences" for those absences which resulted in her incurring "excessive unauthorized occurrences" pursuant to Defendant's attendance policy.

34. On November 7, 2016, Defendant terminated Plaintiff's employment due to said "excessive absences" which should have been covered by accommodation under the FCRA.

35. During the relevant time period, Plaintiff had a heart condition that substantially limited major life activities, including lifting, bending and sleeping.

36. Plaintiff was disabled pursuant to the ADAAA.

37. Defendant's refusal to engage Plaintiff in the interactive process to explore reasonable accommodations following Plaintiff's surgery was a violation of her rights pursuant to the ADAAA.

38. Defendant's decision to terminate Plaintiff instead of exploring or providing reasonable accommodation(s) was pretext for disability discrimination.

39. As a result of losing her job, Plaintiff incurred medical bills that otherwise would have been covered by Defendant's group health plan and had to surrender her apartment.

40. Around February 2016, Plaintiff suffered an injury that required a brief hospitalization.

41. Around June 2016, Plaintiff suffered another injury that required an additional brief hospitalization.

42. Around the same time, June 2016, Plaintiff was dealing with some personal issues that required her attention outside of work.

43. Due to the number of hours the Assistant Manager position required, Plaintiff considered other positions available with Defendant that would allow her some additional free time.

44. Plaintiff inquired with Regional Manager, Jon Mejia, with regard to other available positions with Defendant that would provide a reduced work load. She also inquired as to the rate of pay for those positions. The rate of pay was a particularly important factor because Plaintiff could not afford any substantial decrease in pay.

45. Plaintiff ultimately did not take any further action on changing positions and continued working in her position as Assistant Manager.

46. Around July 2016, Plaintiff had a sudden onset of severe pelvic pain and blood in her urine.

47. Plaintiff went to the hospital where she was informed she had a kidney infection and a mass in her ovaries that was causing bleeding. Plaintiff was required to remain in the hospital for around one week.

48. While Plaintiff was in the hospital she was in constant communication with her supervisors and ensured they were informed of her need for leave.

49. As soon as Plaintiff was discharged from the hospital she reached out to Mr. Mejia and asked when she could meet with him so that she could provide all the necessary paperwork supporting her need for leave due to her hospitalization.

50. The next day, Plaintiff met Mr. Mejia at the store location where she worked. He informed her that they were transferring her, effective immediately, to a new store location.

51. Plaintiff immediately set off to the new store location to begin her work day. When she arrived at her new store she proceeded to clock in and discovered that her Assistant Manager card did not work. To Plaintiff's surprise, she learned that while she was in the hospital she had been demoted.

52. In her new role, Plaintiff was not permitted to work more than thirty-two hours per week. As such, her income potential decreased by about $15,000 annually.

53. Plaintiff was not given any explanation for her demotion.

54. At all times, Plaintiff was ready, able, and willing to perform the essential functions of the Assistant Manager position.

55. Plaintiff believes she was discriminated against because of her actual and/or perceived disability, and in retaliation for requesting protected leave to obtain hospital treatment for her kidney and ovary condition.

56. Due to Defendant's discrimination and retaliation, Plaintiff had no choice but to resign effective October 17, 2016.

## COUNT I
## DISCRIMINATION UNDER THE ADAAA

57. Plaintiff re-alleges and incorporates all allegations contained within Paragraphs one (1) through fifty-six (56), above, as if fully set forth herein.

58. Plaintiff was a qualified individual with a disability.

59. Plaintiff was perceived as disabled by Defendant.

60. Defendant was Plaintiff's employer as defined by the ADAAA.

61. Defendant discriminated against Plaintiff because of her actual or perceived disability in violation of the ADAAA.

62. Defendant discriminated against Plaintiff because she exercised her rights under the ADAAA by notifying Defendant of her request for an accommodation of leave from work due to her hospitalization.

63. Defendant had actual or constructive knowledge of the discriminatory conduct.

64. Defendant's acts and omissions negatively affected one or more terms, conditions and/or privileges of Plaintiff's employment.

65. Defendant's conduct violated Plaintiff's right to be free from discrimination as guaranteed by the ADAAA.

66. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused and continue to cause irreparable harm.

67. Defendant's violations of the ADAAA were willful.

68. Plaintiff is entitled to recover her attorneys' fees and costs pursuant to the ADAAA.

WHEREFORE, Plaintiff, SHARON BECKER, demands judgment against Defendant for compensatory damages for emotional pain and suffering, injunctive relief, prejudgment interest; declaratory judgment that Defendant's practices violate the ADAAA, costs and attorney's fees, and such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated this 2nd day of June, 2022.

>Respectfully submitted,
>
>**/s/ MATTHEW GUNTER, ESQ.**
>Matthew R. Gunter, Esquire
>FBN 0077459
>Morgan & Morgan, P.A.
>20 N. Orange Avenue, 16th Floor
>Orlando, FL 32801
>Telephone: (407) 236-0946
>Facsimile: (407) 867-4791
>Email: MGunter@forthepeople.com
>*Attorneys for Plaintiff*